UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAULA M. FERRARI,

       Plaintiff,

  v.

ANDREW SAUL, Commissioner of Social Security,

       Defendant.

18-CV-6457
DECISION & ORDER

---

On June 19, 2018, the plaintiff, Paula M. Ferrari, brought this action under the Social Security Act. Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. *Id.* On March 8, 2019, Ferrari moved for judgment on the pleadings, Docket Item 11; on June 4, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 18; and on June 25, 2019, Ferrari replied, Docket Item 19.

For the reasons stated below, this Court grants Ferrari's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision, and will reference only the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.     ALLEGATIONS

Ferrari argues that the ALJ erred in two ways. Docket Item 11-1 at 22, 27. First, she argues that the ALJ erred in "reject[ing], without explanation, portions of the opinion evidence and bas[ing] the [physical Residual Functional Capacity ('RFC')] on his own lay judgment." *Id.* at 22. Second, she argues that the ALJ erred "in weighing the opinion evidence regarding [Ferrari's] mental limitations." *Id.* at 27. This Court agrees that the ALJ erred prejudicially and therefore remands this matter for reconsideration of

2

Ferrari's RFC, including reassessment of the opinions of Karl Eurenius, M.D., and Aiko Takemura, L.C.S.W.

## II. ANALYSIS

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). Thus, while the ALJ may consider the opinions of "other sources"—e.g., social workers—there is no obligation to assign weight or give deference to these sources. *Id.* But the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, 2006 WL 2329939, at *6. When there is conflicting evidence in the claimant's record, "[t]he consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an 'other source.'" *Id.* at *4 (citing 20 C.F.R. § 404.1527(d) and § 416.927(d)).

Moreover, where—as here—there is no opinion in the record from a treating physician, "the opinions of consulting and examining physicians and non-acceptable medical sources . . . 'take[ ] on particular significance.'" *Montanez v. Berryhill*, 334 F.

3

Supp. 3d 562, 564 (W.D.N.Y. 2018) (quoting *Dioguardi v. Commissioner*, 445 F.Supp.2d 288, 295 (W.D.N.Y. 2006)).[2]  "In such circumstances, an ALJ must consider opinions by each of these sources using the same factors that are typically used to evaluate the opinions of treating physicians (e.g., physician's area of specialty, whether opinion is supported by objective testing or other evidence of record), and must explain in his decision the weight given to each and the reasons therefor."  *Id.* (citing 20 C.F.R. §§ 404.1527(c)(1)-(6), § 404.1527(f)(1)).  An "ALJ's failure to do so constitutes grounds for remand."  *Id.*

Here, the ALJ found that Ferrari had the RFC

> to perform sedentary work[3] . . . except [that she can] no more than frequently turn [her] head from side to side; [is] limited to performing simple routine tasks; [is limited to] occasional interaction with coworkers and the general public; [and is] limited to low stress work defined as work involving only occasional decision making.

Docket Item 6-8 at 11-12 (footnote added).  In reaching that result, the ALJ gave only "some weight" to the opinion of Dr. Eurenius, a consulting internist, accepting some of

---

[2]  Ferrari does not argue that the ALJ erred in failing to request an opinion from her family physician, Rickey Hermann, M.D.  This Court notes, however, that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner must "request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)."  *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6), which applies to Ferrari's application for benefits) (additional citation omitted).  Therefore, if the ALJ has not requested an opinion from Dr. Hermann, he should do so on remand.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

the physician's conclusions and rejecting others.  Docket Item 6-8 at 13.  Likewise, the ALJ gave only "limited weight" to the opinion of Ms. Takemura, a social worker who treated Ferrari, accepting some of Ms. Takemura's conclusions and rejecting others.  *Id.* at 17.

For the reasons that follow, this Court finds that the ALJ did not adequately explain his reasoning for rejecting certain conclusions of Dr. Eurenius with respect to Ferrari's physical RFC, and certain conclusions of Ms. Takemura with respect to Ferrari's mental limitations.  This Court therefore remands this case for further administrative proceedings.  *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (explaining that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review").

### A.     Dr. Eurenius's Opinion

Dr. Eurenius, an internist, conducted a consultative examination of Ferrari on July 5, 2012.  Docket Item 6-7 at 98.  He noted that Ferrari's primary complaint was "pain in her abdominal wall."  *Id.* at 100.  "She [could not] walk on heels or toes because she [said] this hurt[ ] her abdominal wall and her balance [was] not good."  *Id.*  "She use[d] a cane[,] which she [held] in either hand for both balance and pain."  *Id.*

Dr. Eurenius diagnosed Ferrari with, among other things, "[a]typical abdominal wall pain, unknown etiology."  *Id.* at 102.  He opined that she was "markedly limited in standing, walking, climbing, bending, lifting, carrying, or kneeling due to this atypical abdominal wall pain."  *Id.*

The ALJ "accord[ed] only some weight to the opinion of Dr. Eurenius because while the record shows that [Ferrari] is physically limited, it does not rise to the level of marked limitation. Indeed, it is 'atypical' pain." Docket Item 6-8 at 13. "Thus," the ALJ concluded, "relegating [Ferrari] to a reduced range of sedentary residual functional capacity takes her pain limitations into account." *Id.*

Ferrari argues that the ALJ's "conclusory reasoning" for rejecting Dr. Eurenius's opinion "is insufficient to allow meaningful review." Docket Item 11-1 at 23. This Court agrees.

First, the ALJ's conclusion that Dr. Eurenius's description of Ferrari's abdominal wall pain as "atypical" undermined the physician's finding of marked limitations is a non sequitur. "Atypical" does not mean suspect or inconsequential. Indeed, "atypical" pain may well be very real and more severe than "typical" pain. The ALJ's suggestion that because the pain was "atypical" it could not be disabling is reason alone to question his conclusion

In addition, the ALJ did not explain which parts of the record demonstrate that the limitations found by Dr. Eurenius "do not rise to the level of a marked limitation." Docket Item 6-8 at 13. Without some indication of why the ALJ believes that Dr. Eurenius's conclusions are inconsistent with the record this Court is left to guess, thus "frustrat[ing] meaningful review." *See Cichocki*, 729 F.3d at 177.

Finally, it is not at all clear how the ALJ was able to determine that "relegating [Ferrari] to a reduced range of sedentary residual functional capacity takes her pain limitations into account." Docket Item 6-8 at 13. Sedentary work "generally involves up to two hours of standing or walking . . . in an eight-hour work day." *Perez v. Chater*, 77

6

F.3d 41, 46 (2d Cir. 1996) (emphasis added) (citing SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)).  The ALJ did not assess how long Ferrari could stand or walk despite her pain, nor does it appear that he relied on any medical opinion providing that assessment.

In this regard, although Robert Mogul, M.D.—a state agency physician who reviewed Ferrari's medical records but did not examine her—found that Ferrari could stand and/or walk for about six hours in an eight-hour workday, Docket Item 6-7 at 115, the ALJ found that Ferrari was "more limited than" Dr. Mogul opined, Docket Item 6-8 at 14.  But the ALJ did not explain in what respects Ferrari was more limited than Dr. Mogul concluded, so this Court has no way of knowing whether the ALJ accepted Dr. Mogul's conclusion about how long Ferrari could stand and walk or whether there was another reason behind the ALJ's RFC determination.  The ALJ should have either explained that he was relying on Dr. Mogul's assessment of Ferrari's ability to stand and/or walk or solicited such an opinion and grounded his RFC finding in it.  *See Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review."); *Duross v. Comm'r of Soc. Sec.*, No. CIV1:05CV368RFT, 2008 WL 4239791, at *9 (N.D.N.Y. Sept. 11, 2008) (remanding for further administrative proceedings where the "the ALJ failed to explain on which specific evidence he relied in

making the RFC determination" and "failed to describe *how* the evidence supports each conclusion" (emphasis in original)).[4]

Accordingly, this Court remands this matter so that the ALJ can reconsider Ferrari's RFC after properly assessing Dr. Eurenius's opinion.

### B.     Ms. Takemura's Opinion

Ferrari contends that the ALJ also erred in according limited weight to the evaluation of Ms. Takemura—who, as a social worker, is an "other source." Docket Item 11-1 at 27-28. Ms. Takemura treated Ferrari from January 2016 through at least June 2017. *See* Docket Item 6-13 at 246-49. In August 2017, Ms. Takemura opined that Ferrari "had marked restriction of activities of daily living[;] marked difficulties in maintaining social functioning[;] marked difficulties in maintaining concentration, persistence, or pace[;] and four or more episodes of decompensation." Docket Item 6-8 at 17; *see also* Docket Item 6-13 at 404-07.

The ALJ "accord[ed] Ms. Takemura's opinion limited weight, as marked limitations in the B criteria areas are clearly inconsistent with her own report wherein

---

[4] Ferrari also argues that the ALJ erroneously gave only "some weight" to the opinion of internist Mohammed Zaman, M.D., who conducted a consultative examination of Ferrari on January 27, 2016. *See* Docket Item 6-8 at 14-15; Docket Item 11-1 at 25-26. But Dr. Zaman found only "moderate limitation[s] in walking, climbing, lifting, and carrying," Docket Item 6-13 at 65, and Ferrari does not explain how such limitations are inconsistent with sedentary work. Similarly, although Ferrari faults the ALJ for failing to "explain how he found that [Ferrari] could perform the occasional walking and standing requirements of sedentary work—on a full-time basis—given the medical necessity of a cane for ambulation," Docket Item 1101 at 25, she does not explain why her use of a cane renders her unable to perform those requirements. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (explaining that the plaintiff "had a duty to prove a more restrictive RFC" than the ALJ found).

8

she says the claimant is 'responding well to therapy.'" Docket Item 6-8 at 17.  The ALJ continued:

> In addition, Ms. Takemura treated [Ferrari] on a monthly basis, but then noted that anxiety prevented [Ferrari] from engaging in appointments.  In addition, she reported that [Ferrari] had three or more episodes of decompensation.  The medical record and therapy notes do not support an inability to engage in appointments or episodes of decompensation.  Moreover, the report further lacks a good explanation for its findings and is not supported internally.  Lastly, marked limit[ation]s are inconsistent with [the] clinical findings [of Adam Brownfield, Ph.D., Ferrari's] activities of daily living, and the overall weight of the psychiatric evidence.

*Id.*

Again, the ALJ's most basic conclusion is a non sequitur:  the fact that Ferrari may have been "responding well to therapy" does not undermine Ms. Takemura's opinion that Ferrari suffered from "marked . . . [d]ifficulties in social functioning."  *See id.*; *see also Bogdan v. Colvin,* No. 1:13-CV-00875 (MAT), 2016 WL 1398986, at *3 (W.D.N.Y. Apr. 11, 2016) ("Although the record does indicate that [the] plaintiff's condition improved with treatment, the record does not support the ALJ's conclusion that such improvement in treatment translated into an ability to perform work on a full-time basis with the limited restrictions assessed in the ALJ's RFC finding.").  Stated more simply, Ferrari might well have been improving but still have been disabled.

Similarly, the fact "that [Ms. Takemura] treated the claimant on a monthly basis," Docket Item 6-8 at 17, does not contradict Ms. Takemura's observation that Ferrari had trouble "engaging in appointments, work, and her social life," Docket Item 6-13 at 404.  As Ferrari observes, the ALJ "fails to account for the fact that [Ferrari] could do well in structured setting like therapy, while at the same time being unable to perform at a full-

9

time job on a regular, consistent basis."  Docket Item 11-1 at 27; *cf. Zwick v. Apfel,* No. 97 CIV. 5140 (JGK), 1998 WL 426800, at *8 (S.D.N.Y. July 27, 1998) (remanding where the plaintiff improved during inpatient treatment, but "the ALJ failed to consider the positive effect of the structured setting, instead giving considerable weight to the reports from after her release from the inpatient program in making his determination").  In other words, being able to attend monthly therapy appointments does not translate into being able to engage more frequently in work or social meetings.

Moreover, while it was within the ALJ's discretion to credit Dr. Brownfield—a consulting examiner—over Ms. Takemura, the ALJ had to give reasons for doing so.  Indeed, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)), so at the very least an ALJ should give good reasons for doing just that while discrediting the findings of a provider with a longstanding treatment relationship.  Here, the ALJ did not explain why he chose to credit Dr. Brownfield's one-time examination over Ms. Takemura's opinion, which was based on observing and treating Ferrari for more than a year.  And Ms. Takemura's mental RFC assessment clearly could "have [had] an effect on the outcome of the case," SSR 06-03P, 2006 WL 2329939, at *6, as she opined greater mental limitations than the ALJ found.  *See* Docket Item 6-8 at 10 (finding that Ferrari had moderate limitations in "interacting with others" and "concentrating, persisting, or maintaining pace" and a mild limitation in "adapting or managing oneself"); *see also Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (remanding where

"the portions of [the doctor's] opinion that the ALJ disregarded without explanation would have an effect on the outcome of [the p]laintiff's case").[5]

For all those reasons, this Court remands this case so that the ALJ can reevaluate Ferrari's RFC and accord appropriate weight to the opinions of Dr. Eurenius and Ms. Takemura.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 18, is DENIED, and Ferrari's motion for judgment on the pleadings, Docket Item 11, is GRANTED IN PART AND DENIED IN PART.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:  May 19, 2020
        Buffalo, New York

                                         /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

---

[5] Ferrari also argues that the ALJ erred in weighing the opinion of Kavitha Finnity, Ph.D., a consulting examiner.  Docket Item 11-1 at 28-29.  More specifically, Ferrari contends that "the ALJ did not explain his reasoning beyond . . . sweeping conclusory statements, which was impermissible." Id. at 28.  But the ALJ explained his rationale for partially rejecting Dr. Finnity's conclusions:  the ALJ found that Dr. Finnity's opinions that Ferrari was unable to maintain a regular schedule, appropriately deal with stress, or relate to others were "inconsistent with Dr. Finnity's clinical findings, [Ferrari's] own reported activities of daily living discussed above, including working part-time as a cashier in 2015 and 2016, and . . . subsequent evidence from [Kathryn Vullo, Ph.D.—a psychologist who treated Ferrari—] and Dr. Brownfield." Docket Item 6-8 at 16.  Beyond labeling the ALJ's analysis as "conclusory," Ferrari does not explain why the ALJ's rationale for partially rejecting Dr. Finnity's conclusions was incorrect.